**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHARON HULIHAN ) | 2:09-cv-01096-ECR-RJJ |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Order** |
| ) | |
| THE REGIONAL TRANSPORTATION ) | |
| COMMISSION OF SOUTHERN NEVADA, a ) | |
| Public Entity under State and ) | |
| Federal Statutes and LAIDLAW ) | |
| TRANSIT SERVICES, INC., a Foreign ) | |
| Corporation; and FIRST TRANSIT, ) | |
| INC., a Foreign Corporation; and ) | |
| DOES 1-100, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

    This case arises out of injuries suffered by Plaintiff both after being denied access to and while a passenger on Defendants' Paratransit bus system.  Plaintiff alleges three causes of action against Defendants: (i) a claim for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 (the "ADA"); (ii) a claim for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 ("Section 504"); and (iii) a state law claim for negligent failure to train, supervise and manage employees as to Defendants First Transit, Inc. and Laidlaw Transit Services, Inc. only.

**I. Factual Background**

Plaintiff is an individual residing in Clark County, Nevada with a "disability," as such term is defined in Title II of the ADA, Section 504, and all other relevant state and federal statutes. (Compl. ¶ 1 (#3).) Plaintiff requires the use of a wheelchair for mobility. Id. Defendant Regional Transportation Commission of Southern Nevada ("RTCSN") is a public entity organized under the laws of the State of Nevada that has its principal place of business in Las Vegas, Clark County, Nevada and is authorized to transact business as a common carrier in Nevada. (Id. ¶ 2.) Defendants Laidlaw Transit Services, Inc. ("Laidlaw") and First Transit, Inc. ("First Transit") are Delaware corporations doing business in Nevada as common carriers and at all places and times relevant to this case were operating under contract to RTCSN to provide paratransit transit services to disabled individuals. (Id. ¶ 3.)

Plaintiff alleges that Defendants discriminate against Plaintiff and others similarly situated by:

(i) operating buses that they know or should know lack functional mechanical lifts and tie-down straps needed by wheelchair users and other mobility-impaired riders to board, ride and exit the bus;

(ii) failing to provide employees with the training and materials necessary to inspect, maintain, repair and operate such mechanical lifts and tie-down straps;

(iii) neglecting to ensure proper inspection, maintenance and repair of bus wheelchair lifts and tie-down straps and directing or

1  allowing drivers to operate buses with malfunctioning or
2  nonfunctioning wheelchair lifts on fixed route bus lines; and
3       (iv) neglecting to ensure that pick-up times and places are
4  coordinated based on the RTCSN Paratransit pick-up and drop-off
5  schedule and directing or allowing drivers to "abandon disabled
6  riders at the place appointed for pickups." (Id. ¶ 9(a)-(d).)
7       Plaintiff alleges that the buses operated by Defendants are one
8  of the only available and affordable transit options for Plaintiff
9  and other individuals with disabilities in Clark County. (Id. ¶ 10.)
10 Defendants operate both buses on fixed routes with fixed schedules
11 and a Paratransit system by which riders may schedule their own
12 pick-ups. (Id. ¶¶ 9(e), 10-11.)
13      On or about July 5, 2007, Plaintiff scheduled a pick-up using
14 Defendants' Paratransit system to travel from the Las Vegas Cancer
15 Clinic to her home. (Id. ¶ 11.)  The Paratransit bus did not arrive
16 at 4:50 P.M., the scheduled pick-up time.  Plaintiff waited until
17 5:30 P.M. for the Paratransit bus, and when it did not arrive, began
18 traveling up Alta Drive in her wheelchair. (Id. ¶¶ 12-13.)
19 Plaintiff asserts that as she was moving along Alta Drive, a
20 Paratransit bus passed her, and the driver of the Paratransit bus
21 refused to stop and pick up Plaintiff or to call for another
22 Paratransit bus. (Id. ¶ 14.)  Plaintiff continued to travel along
23 Alta Drive and stopped at a local business where she fell from her
24 wheelchair while on a non-ADA compliant ramp and was injured,
25 resulting in a "lengthy stay in a medical facility." (Id. ¶¶ 14-17.)
26      On or about October 16, 2007, Defendants' Paratransit bus
27 arrived at Plaintiff's home to transport Plaintiff to her mother's
28
                                    3

home. (Id. ¶ 18-19.) Plaintiff alleges that the Paratransit bus driver failed to secure Plaintiff into her wheelchair for the ride, causing her to be ejected from the wheelchair when the Paratransit driver applied the brakes. (Id. ¶ 20-21.) Plaintiff asserts that paramedics were called to the scene and that two firefighters were required to extricate Plaintiff from underneath the Paratransit bus seats. (Id. ¶ 22.) Plaintiff was treated for injuries to her leg at Summerlin Hospital and asserts that she continues to suffer from injuries received as a result of this incident. (Id. ¶ 23.)

Plaintiff alleges that her injuries from Defendants' conduct include, but are not limited to, emotional distress, time lost from education, income from lost work, expenses for alternative transportation and pain and suffering. (Id. ¶ 45.)

## II. Procedural Background

Plaintiff filed her complaint (#3) on July 3, 2009. Summons was issued as to Defendants (#5) on the same date. Defendants filed their answer (#10) to Plaintiff's complaint (#3) on November 30, 2009. Defendants filed a motion (#40) for summary judgment on June 28, 2010. Plaintiff opposed (#45) and Defendants replied (#46). On August 5, 2010, we issued a minute order (#47) denying Defendants' motion (#40) for summary judgment without prejudice and staying the case for sixty days for the purpose of the parties conducting discovery. We further ordered that Defendants may re-file or file another motion for summary judgment within thirty days after the sixty day discovery period ends. (#47) Defendants renewed their motion (#67) for summary judgment on October 12, 2010. Plaintiff

4

opposed (#75) and Defendants replied (#76).  The motion is ripe, and we now rule on it.

### III. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the

5

1 parties may submit evidence in an inadmissible form — namely, 2 depositions, admissions, interrogatory answers, and affidavits — 3 only evidence which might be admissible at trial may be considered 4 by a trial court in ruling on a motion for summary judgment. FED. 5 R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 6 1179, 1181 (9th Cir. 1988).

7     In deciding whether to grant summary judgment, a court must 8 take three necessary steps: (1) it must determine whether a fact is 9 material; (2) it must determine whether there exists a genuine issue 10 for the trier of fact, as determined by the documents submitted to 11 the court; and (3) it must consider that evidence in light of the 12 appropriate standard of proof. Anderson, 477 U.S. at 248. Summary 13 judgment is not proper if material factual issues exist for trial. 14 B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 15 1999). "As to materiality, only disputes over facts that might 16 affect the outcome of the suit under the governing law will properly 17 preclude the entry of summary judgment." Anderson, 477 U.S. at 248. 18 Disputes over irrelevant or unnecessary facts should not be 19 considered. Id. Where there is a complete failure of proof on an 20 essential element of the nonmoving party's case, all other facts 21 become immaterial, and the moving party is entitled to judgment as a 22 matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a 23 disfavored procedural shortcut, but rather an integral part of the 24 federal rules as a whole. Id.

25 ---
26 ---
27 ---
28

6

**IV. Defendants' Motion (#67) for Summary Judgment**

**A. Plaintiff's First and Second Causes of Action for Violation of the ADA and Section 504**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Because Title II of the ADA was modeled after Section 504, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045, n. 11 (9th Cir. 1999); see Coons v. Sec'y of the United States Treas., 383 F.3d 879 (9th Cir. 2004).  We will therefore consider the sufficiency of Plaintiff's ADA and Section 504 claims together.

The same remedies are available for violation of Title II of the ADA and Section 504. Roe v. Nevada, 323 F. Supp. 2d 1331 (D. Nev. 2004). See 42 U.S.C. § 12133.  The Ninth Circuit Court of Appeals has held that an individual suing under either the ADA or Section 504 is not entitled to recovery of monetary damages absent a showing of discriminatory intent. Wander v. Kaus, 304 F.3d 856, 858 (2002)(citing Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401-02 (1968)); Ferguson v. City of Phoenix, 157 F. 3d 668, 674 (9th Cir. 1998).  To make a showing of discriminatory intent, a plaintiff must show that defendants acted with "deliberate indifference." Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001).  "Deliberate indifference requires both knowledge that a harm to a

7

federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.  The first element is satisfied when the entity has notice that an accommodation is required. Id.  The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." Id.

To award punitive damages under the ADA, a plaintiff must provide substantial evidence of oppression, fraud, or malice, indicated by hatred, ill-will and the deliberate intent to injure. Village Dev. Co. v. Filice, 526 P.2d 83 (Nev. 1974).  Punitive damages are not available under Section 504. Barnes v. Gorman, 536 U.S. 181, 153 (2002).  Absent such a showing in favor of compensatory and/or punitive damages, the only potential relief Plaintiff may obtain for her ADA and Section 504 claims is declaratory and injunctive relief.

Here, Plaintiff not provided evidence that Defendants' actions rose to the level of deliberate indifference, nor that they were motivated by oppression, fraud, or malice.  We therefore find that Plaintiff is not entitled to compensatory or punitive damages under the ADA and Section 504, but will be limited to declaratory and injunctive relief.

To state a claim under Title II of the ADA and Section 504, a plaintiff must demonstrate that "(1) he is a person with a disability; (2) that he is otherwise qualified; and that the defendant's actions either (3) excluded his participation or denied him the benefits of a service, program or activity; or (4) otherwise subjected him to discrimination on the basis of his physical

8

1 handicap." O'Guinn v. Nev. Dep't of Corr., 2010 U.S. Dist. LEXIS
2 116212 at *9 (D. Nev. Aug. 26, 2010)(citing Duffy v. Riveland, 98
3 F.3d 447, 455 (9th Cir. 1996).

4  Here, Plaintiff has demonstrated, and Defendants do not contest
5 that Plaintiff has established, that she suffers from multiple
6 sclerosis. (Resp. to MSJ Ex. 4 (#75).)  Further, the parties do not
7 contest that as a person with a disability, she is qualified for
8 Defendants' Paratransit services.  Plaintiff asserts that Defendants
9 excluded her participation in the Paratransit transportation system
10 and denied her the benefits thereof by (i) failing to pick her up at
11 the appointed time on July 5, 2007; and (ii) by failing to
12 adequately strap her into her wheelchair properly on October 16,
13 2007, causing Plaintiff to be ejected from her wheelchair and
14 injured when the bus driver applied the brakes. (Id. at 3-4.)

15  Defendants assert that Plaintiff has not provided sufficient
16 evidence to support the allegations in her complaint, noting that
17 Plaintiff has failed to identify any witnesses qualified to testify
18 as to what, if any, ADA violations occurred. (MSJ at 6 (#67).)
19 Defendants further contend that Plaintiff is herself not qualified
20 to testify as to what violations, if any, of the ADA occurred. (Id.)
21 They claim that Plaintiff does not identify any persons in upper
22 management of Defendants' companies, nor any engineer or other
23 vehicle maintenance witnesses capable of testifying as to the
24 condition of the vehicles or required practices as to vehicle
25 maintenance and repair. (Id. at 7.)  Finally, Defendants allege that
26 while Plaintiff claims to have been denied equal access to the
27
28

9

1 Paratransit bus system, it appears that she has been riding the
2 Paratransit buses for some time. (MSJ at 8 (#67).)
3   We disagree.  We find that Plaintiff has, by a narrow margin,
4 presented evidence sufficient to show that there is a genuine issue
5 of material fact as to whether Defendants excluded her participation
6 in the Paratransit transportation system, denied her the benefits
7 thereof, or otherwise subjected her to discrimination on the basis
8 of her disability.
9   With respect to the July 5, 2007 incident, Plaintiff has
10 offered evidence to show that Defendants excluded her participation
11 in the Paratransit transportation system by failing to pick her up
12 at the appointed time.  Plaintiff has provided a progress report
13 from Las Vegas Skin & Cancer Clinics, Ltd. showing that she had an
14 appointment there on July 5, 2007. (Resp. to MSJ Ex. 2 (#75).)  She
15 has also provided a manifest report from First Transit indicating
16 that the Paratransit bus arrived at Las Vegas Skin & Cancer Clinics,
17 Ltd. at 5:25PM on July 5, 2007. (Id. Ex. 14.)  It is not necessary
18 for Plaintiff to provide, as Defendants suggest, an expert witness
19 to determine that an ADA violation occurred in order to establish
20 that there is a genuine issue of material fact as to whether
21 Plaintiff was denied participation in the Paratransit system when a
22 paratransit bus failed to pick her up at the appointed time on July
23 5, 2007.
24   With respect to the October 16, 2007 incident, Plaintiff has
25 offered evidence to show that Defendants denied her the benefits of
26 the Paratransit system by failing to adequately strap her wheelchair
27 onto the bus, causing her injury when she was ejected from the
28

10

wheelchair after the bus driver applied the brakes.  Plaintiff has provided a Fire Incident Report from the City of North Las Vegas Fire Department detailing the accident scene. (Id. Ex. 9.)  She has also submitted an ambulance report from American Medical Response detailing her injuries and evidencing her transportation to Summerlin Hospital on October 16, 2007 (Id. Ex. 10.)  Finally, Plaintiff has provided a termination letter from First Transit, Inc. to Felicia Hunt indicating that Ms. Hunt was terminated for failing to properly secure Plaintiff's wheelchair on October 16, 2007, resulting in an accident. (Id. Ex. 18.)  This evidence is sufficient to establish that there is a genuine issue of material fact as to whether Defendants denied her the benefits of the Paratransit system by failing to adequately strap her wheelchair into the bus, causing her injury when she was ejected from the wheelchair after the bus driver applied the brakes.

**B. Plaintiff's Third Cause of Action for Negligent Failure to Train, Supervise and Manage Employees**

Plaintiff contends that (i) RTCSN and its contractors owed Plaintiff a duty of reasonable care as a Public Entity Transit System and common carrier; (ii) RTCSN and its contractors breached that duty of care by its acts, omissions, and failures to train, supervise and manage; and (iii) Plaintiff suffered physical and mental pain as a result of such breach. (Compl. ¶¶ 59-61.) Plaintiff seeks compensatory damages, interest, attorneys' fees and costs of suit, as well as: (i) a declaration that RTCSN's acts and omissions unlawfully violate Plaintiff's rights under the ADA; (ii) an injunction requiring RTCSN, First Transit and Laidlaw to provide

11

individuals with full and equal access to its public transit system; (iii) a declaration that the acts and omissions of RTCSN, First Transit and Laidlaw unlawfully violated Plaintiff's rights under Section 504; and (iv) an injunction requiring RTCSN, First Transit and Laidlaw to provide individuals with disabilities with full and equal access to its public transit system, and restraining RTCSN from discriminating against individuals with disabilities who use its public transit system. (Id. at 20.)

The Nevada Supreme Court has held that the "general rule in section 146 [of the Restatement (Second) of Conflict of Laws] requires the court to apply the law of the state where the injury took place. Gen. Motors Corp. V. Eighth Judicial Dist. Court, 134 P.3d 111, 117 (Nev. 2006). Here, Plaintiff's alleged injury occurred in Nevada. In Nevada, to prove a claim for negligence, Plaintiff must show (i) that she was owed a duty of care by Defendants; (ii) that the duty of care was breached; (iii) that the breach was the proximate cause of Plaintiff's damages; and (iv) that Plaintiff suffered actual damages. Joynt v. California Hotel & Casino, 835 P.2d 799 (Nev. 1992). Defendants claim that Plaintiff must prove proximate cause of damages through admissible evidence in the form of expert testimony stated to a reasonable degree of medical probability, citing Neal-Lomax v. Las Vegas Metropolitan Police Department, 574 F. Supp. 2d 1193, 1199 (D. Nev. 2008). Neal-Lomax, however, is distinguishable from the case at hand. In Neal-Lomax, the court found that in a products liability action, a plaintiff must provide medical expert testimony to establish that the product proximately caused the decedent's death. We are neither

12

1 required nor inclined to apply this proposition more broadly here.[1]
2 While medical expert testimony may be helpful in establishing
3 proximate cause sufficient to defeat a motion for summary judgment
4 in any negligence case, we do not believe it is mandatory in every
5 negligence case.  The Neal-Lomax holding is limited to products
6 liability cases, and we do not extend it here.

7     In their motion (#67) for summary judgment, Defendants contend
8 that Plaintiff's negligence claim fails because she cannot prove
9 proximate cause and damages.  We agree.  Plaintiff's complaint has
10 not met the standard required to survive a motion for summary
11 judgment with respect to her claim of negligence.  Plaintiff states
12 that Defendants owed her a duty of care upon boarding the bus, but
13 does not offer any support for this assertion. (Compl. ¶ 59 (#3).)
14 Nevada case law does provide, however, and Defendants do not
15 contest, that a common carrier "is bound to use the utmost care and
16 diligence" to secure the safety of its passengers. See, e.g.,
17 Sherman v. Southern Pac. Co., 111 P. 416 (Nev. 1910).

18     Plaintiff has shown proximate cause with respect to the October
19 16, 2007 incident, but not with respect to the July 5, 2007
20 incident.  It is foreseeable that a failure to adequately secure a
21 wheelchair-bound passenger could result in that passenger sustaining
22 injuries from being ejected from the wheelchair.  It is not
23 foreseeable to the point of establishing legal cause, however, that
24 a failure to pick up a wheelchair-bound passenger at the appointed

---

[1] We disagree with the broad application of this principle in Hulihan v. Circle K Stores, Inc., 2010 U.S. Dist. LEXIS 71701, which opinion is not binding on this Court.

13

time would result in that passenger sustaining injuries after falling from her wheelchair while moving up a non-ADA compliant ramp at a local store.  Proximate cause "is that cause which is natural and a continuous sequence, unbroken by any other intervening causes, that produces the injury and without the which the injury would not have occurred." Gonzalez v. McDaniel, 2008 U.S. Dist. LEXIS 89991 at *22 (D. Nev. Oct. 22, 2008).  Here, viewing the allegations in the light most favorable to Plaintiff, we find that Plaintiff has not shown that the noncompliant ramp was not an intervening cause in her injury from the July 5, 2007 incident.  As such, Plaintiff has not established that Defendants' failure to pick her up at the appointed time was a proximate cause of her injuries on this date.

Finally, despite a showing of proximate cause with respect to the October 16, 2007 incident, Plaintiff has not provided a computation of damages as required under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) with respect to either the October 16, 2007 incident or the July 5, 2007 incident.  As such, there is no issue of material fact as to whether Plaintiff suffered damages as a result of Defendants' negligence.  We will therefore grant Defendants' motion (#67) for summary judgment as to Plaintiff's third cause of action for negligent failure to train, supervise and manage employees as to Defendants First Transit, Inc. and Laidlaw Transit Services, Inc.

### **V. Conclusion**

We have found that Plaintiff's first and second causes of action for violations of the ADA and Section 504 will survive

14

1  Defendants' motion (#67) to dismiss.  Plaintiff has provided
2  evidence sufficient to establish that there is a genuine issue of
3  material fact as to whether Defendants denied her the benefits of
4  the paratransit system on July 5, 2007 and October 16, 2007,
5  respectively.
6      Finally, we have found that Plaintiff's third cause of action
7  for negligent failure to train, supervise and manage employees
8  fails.  While Plaintiff has established proximate cause with respect
9  to the October 16, 2007 incident, she has failed to establish
10 proximate cause with respect to the July 5, 2007 incident, and has
11 failed to provide a computation of damages as required under Federal
12 Rule of Civil Procedure 26(a)(1)(A)(iii) with respect to either the
13 October 16, 2007 incident or the July 5, 2007 incident.

15     **IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion (#67)
16 for summary judgment is **DENIED** as to Plaintiff's First and Second
17 Causes of Action for Violation of the ADA and Section 504.
18     **IT IS FURTHER ORDERED** that Defendants' motion (#67) for summary
19 judgment is **GRANTED** as to Plaintiff's third cause of action for
20 negligent failure to train, supervise and manage employees as to
21 Defendants First Transit, Inc. and Laidlaw Transit Services, Inc.

24 DATED: June 21, 2011.

_Edward C. Reed_
UNITED STATES DISTRICT JUDGE

15