**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHARON HULIHAN, | 2:09-cv-01096-ECR-RJJ |
| Plaintiff, | **Order** |
| vs. | |
| THE REGIONAL TRANSPORTATION COMMISSION OF SOUTHERN NEVADA, a Public Entity under State and Federal Statutes; LAIDLAW TRANSIT SERVICES, INC., a Foreign Corporation; FIRST TRANSIT, INC., a Foreign Corporations; and DOES 1-100, inclusive | |
| Defendants. | |

This case arises out of injuries Plaintiff suffered after being denied access to and while a passenger on Defendants' Paratransit bus system. Now pending is Defendants' Motion for Summary Judgment (#119) and Plaintiff's Second Motion for Reconsideration (#127). The motions are ripe and we now rule on them.

### I. Factual Background

Plaintiff is an individual residing in Clark County, Nevada with a "disability," as such term is defined in Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and all other relevant state and federal statutes. (Compl. ¶ 1 (#3).)  Plaintiff requires the use of a

1 wheelchair for mobility.  (Id.)  Defendant Regional Transportation
2 Commission of Southern Nevada ("RTCSN") is a public entity organized
3 under the laws of the State of Nevada that has its principal place
4 of business in Las Vegas, Clark County, Nevada and is authorized to
5 transact business as a common carrier in Nevada. (Id. ¶ 2.)
6 Defendants Laidlaw Transit Services, Inc. ("Laidlaw") and First
7 Transit, Inc. ("First Transit") are Delaware corporations doing
8 business in Nevada as common carriers and at all places and times
9 relevant to this case were operating under contract to RTCSN to
10 provide paratransit transit services to disabled individuals. (Id. ¶
11 3.) The buses operated by Defendants are one of the only available and
12 affordable transit options for Plaintiff and other individuals with
13 disabilities in Clark County. (Id. ¶ 10.)  Defendants operate both buses
14 on fixed routes with fixed schedules and a Paratransit system by which
15 riders may schedule their own pick-ups.

16      On or about July 5, 2007, Plaintiff scheduled a pick-up using
17 Defendants' Paratransit system to travel from the Las Vegas Cancer
18 Clinic to her home. (Id. ¶ 11.) The Paratransit bus did not arrive
19 at 4:50 P.M., the scheduled pick-up time. Plaintiff waited until
20 5:30 P.M. for the Paratransit bus, and when it did not arrive, began
21 traveling up Alta Drive in her wheelchair. (Id. ¶¶ 12-13.)  Plaintiff
22 asserts that as she was moving along Alta Drive, a
23 Paratransit bus passed her, and the driver of the Paratransit bus
24 refused to stop and pick up Plaintiff or to call for another
25 Paratransit bus. (Id. ¶ 14.) Plaintiff continued to travel along
26 Alta Drive and stopped at a local business where she fell from her
27 wheelchair while on a non-ADA compliant ramp and was injured,
28

resulting in a "lengthy stay in a medical facility." (Id. ¶¶ 14-17.)

On or about October 16, 2007, Defendants' Paratransit bus arrived at Plaintiff's home to transport Plaintiff to her mother's home. (Id. ¶ 18-19.)  The Paratransit bus driver failed to secure Plaintiff into her wheelchair for the ride, causing her to be ejected from the wheelchair when the Paratransit driver applied the brakes. (Id. ¶ 20-21.)  Paramedics were called to the scene and two firefighters were required to extricate Plaintiff from underneath the Paratransit bus seats. (Id. ¶ 22.) Plaintiff was treated for injuries to her leg at Summerlin Hospital and asserts that she continues to suffer from injuries received as a result of this incident. (Id. ¶ 23.)

In her Complaint (#3) filed on June 16, 2009, Plaintiff alleged three causes of action against Defendants: (1) a claim for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 (the "ADA"); (2) a claim for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 ("Section 504"); and (3) a state law claim for negligent failure to train, supervise, and manage employees as to Defendants First Transit, Inc. and Laidlaw Transit Services, Inc.

By Order (#94) on June 21, 2011, this Court granted in part and denied in part Defendants' Motion for Summary Judgment (#67).  The motion was granted as to Plaintiff's third cause of action for state law negligence and denied as to her first and second claims for violations of the ADA and Section 504.  The Court further determined that Plaintiff is not entitled to compensatory or punitive damages under the ADA and Section 504 in the absence of discriminatory intent, but is limited to declaratory and injunctive relief.  Thus,

1 the only remaining claims are for declaratory and injunctive relief
2 under the ADA and Section 504.
3    On October 6, 2011, we denied (#116) Plaintiff's Motion to
4 Amend Summary Judgment (#101).  We denied (#117) Plaintiff's Motion
5 for Clarification (#110) on October 19, 2011.  On October 27, 2011,
6 the Court of Appeals dismissed Plaintiff's Notice of Appeal (#111)
7 because the order challenged is not final or appealable.  The Court
8 of Appeals also denied Plaintiff's petition for writ of mandamus,
9 finding that she had failed to demonstrate that this case warranted
10 the intervention of that Court.
11    On October 5, 2011, this Court denied (##114, 115) without
12 prejudice Defendants' Motion for Attorney's Fees and Costs (#100) as
13 premature because there has yet to be an entry of final judgment in
14 this case.
15    On November 14, 2011, we denied (#125) Plaintiff's Motion for
16 Recusal of District Judge (#121) and Motion for Recusal of
17 Magistrate Judge (#122).
18    Defendants filed a Motion for Summary Judgment (#119) on
19 Plaintiff's remaining claims for declaratory and injunctive relief
20 under the ADA and Section 504 on November 4, 2011.  Plaintiff did
21 not respond in spite of the Court's November 7, 2011 Order (#120)
22 alerting the Plaintiff to the potential consequences for failing to
23 respond to a motion for summary judgment.
24    On November 23, 2011, Plaintiff filed a "reply" (#127) to the
25 Court's previous Order (#125) denying Plaintiff's Motions for
26 Recusal (##121, 122).
27 /   /   /
28

4

## II. Legal Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered

5

1  by a trial court in ruling on a motion for summary judgment. FED.
2  R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d
3  1179, 1181 (9th Cir. 1988).
4       In deciding whether to grant summary judgment, a court must
5  take three necessary steps: (1) it must determine whether a fact is
6  material; (2) it must determine whether there exists a genuine issue
7  for the trier of fact, as determined by the documents submitted to
8  the court; and (3) it must consider that evidence in light of the
9  appropriate standard of proof. Anderson, 477 U.S. at 248. Summary
10 judgment is not proper if material factual issues exist for trial.
11 B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.
12 1999). "As to materiality, only disputes over facts that might
13 affect the outcome of the suit under the governing law will properly
14 preclude the entry of summary judgment." Anderson, 477 U.S. at 248.
15 Disputes over irrelevant or unnecessary facts should not be
16 considered. Id. Where there is a complete failure of proof on an
17 essential element of the nonmoving party's case, all other facts
18 become immaterial, and the moving party is entitled to judgment as a
19 matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a
20 disfavored procedural shortcut, but rather an integral part of the
21 federal rules as a whole. Id.
22 /  /  /
23 /  /  /
24 /  /  /
25 /  /  /
26 /  /  /
27 /  /  /
28

**III. Defendants' Motion for Summary Judgment (#119)**[1]

Defendants move for summary judgment on the basis that Plaintiff has no standing to seek declaratory and injunctive relief under Title II of the ADA and Section 504 of the Rehabilitation Act and that, regardless, she cannot succeed on the merits of these claims. Because Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). Moreover, the same remedies are available for violation of Title II of the ADA and Section 504. Roe ex rel. Preschooler II v. Nevada, 332 F.Supp.2d 1331, 1341 (D. Nev. 2004), *rev'd on other grounds*, 479 F.3d 1175 (9th Cir. 2007); see also 42 U.S.C. § 12133. We will therefore consider Plaintiff's ADA and Section 504 claims for declaratory and injunctive relief together.

Title 42 U.S.C. § 12132 provides as follows: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The ADA further identifies certain practices by public-transportation provides that are

---

[1] Defendants' pending Motion for Summary Judgment (#119) also contains a request to re-open the period for filing dispositive motions. As the Court did not rule on Defendants' previous Renewed Motion for Summary Judgment (#67) until after the filing deadline, the Court will grant this request.

7

considered discriminatory. See 42 U.S.C. § 12142. For example, it is discriminatory for a public entity that operates a fixed route system to purchase a bus that is not readily accessible to individuals who use wheelchairs. 42 U.S.C. § 12142(a). Further, the ADA deems it discriminatory for a public entity operating a fixed-route system to provide disabled individuals with services that are inferior to those services provided to nondisabled individuals. 42 U.S.C. § 12143(a).

"The regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters." Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or., 254 F.3d 846, 849 (9th Cir. 2001). For instance, 49 C.F.R. § 37.131(f) establishes that occasional missed pick-ups are not violations of the ADA until they reach a number substantial enough to be considered a "pattern or practice that significantly limits the availability of service to ADA paratransit eligible persons." Appendix D to Part 37 further explains that a "pattern or practice involves regular, or repeated actions, not isolated, accidental or singular incidents." Along these same lines, 49 C.F.R. § 37.161 establishes that isolated or temporary problems caused by lift malfunctions are not violations of the ADA.

**A. Declaratory Relief**

Plaintiff seeks a declaration that Defendant RTCSN's acts and omissions unlawfully violate Plaintiff's rights under the ADA and Section 504 of the Rehabilitation Act.

"Declaratory relief should be denied when it will neither aid in clarifying and settling legal relations in issue nor terminate

8

the proceedings and afford the parties relief from the uncertainty and controversy they faced." <u>Great Los Angeles Council on Deafness, Inc. v. Zolin</u>, 812 F.2d 1103, 1112 (9th Cir. 1987) (citations omitted). The decision to grant declaratory relief should be made with reference to the public interest, as declarations can serve an important educational function for the public at large as well as the parties to a lawsuit. <u>Id.</u> (citing <u>United States v. Washington</u>, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) (per curiam); <u>Bilbrey v. Brown</u>, 738 F.2d 1462, 1471 (9th Cir. 1984)). Whether or not to grant a declaratory judgment is a matter committed to the sound discretion of the district court. <u>Doe v. Gallinot</u>, 657 F.2d 1017, 1024 (9th Cir. 1981).

   Defendants' claim that Plaintiff does not have standing to seek a declaratory judgment that her rights were violated is without merit. The Court has found no basis in the law for requiring "standing" to seek this type of relief. In fact, declaratory relief is appropriate where it will terminate the proceedings and award the parties relief from the controversy. In this case, Defendants have failed to show that declaratory relief would serve no purpose. As was the case in <u>Zolin</u>, "[s]uch relief might be appropriate as a vindication of plaintiff['s] position and as a public statement" of the extent of a disabled person's rights under ADA and section 504. 812 F.2d at 1113. In <u>Bilbrey v. Brown</u>, the Ninth Circuit reversed and directed the district court to enter an appropriate declaration in the plaintiffs' favor, holding that the district court had ignored the fact that plaintiffs had been wronged and deserved to have their position vindicated even if damages were unavailable to

9

compensate them.  738 F.2d at 1470-71.  Further, the Ninth Circuit emphasized that the district court had failed to consider the public-education function of declaratory judgments, given the "clearly unlawful" acts of defendants.  Zolin, 812 F.2d at 1113 (citing Bilbrey, 738 F.2d at 1470-71).  For these reasons, Plaintiff has "standing" to seek declaratory relief under Title II of the ADA and section 504 of the Rehabilitation Act, as such relief has the potential to vindicate Plaintiff's rights and serve the public interest.

Plaintiff, however, has failed to prove a violation of the ADA or Section 504.  As was the case in Midgett, Plaintiff's evidence establishes a few "frustrating, but isolated instances" of inadequate service and that "a few individual . . . operators have not treated passengers as they are required and trained to do."  254 F.3d at 850.  In Midgett, the Ninth Circuit found that the plaintiff had failed to establish a violation of the ADA in spite of three incidents where paratransit bus wheelchair lifts malfunctioned and affidavits and declarations from five other paratransit users stating their problems with defective lifts.  Id. at 847-48.  Here, Plaintiff's evidence establishes one instance of a missed pick-up, and one instance of an employee failing to properly secure Plaintiff.  "[T]hese occasional problems do not, without more, establish a violation of the ADA."  Id.  For this reason, Plaintiff's claim for declaratory relief pursuant to the ADA and Section 504 must be dismissed.

10

**B. Injunctive Relief**

Because evidence of one isolated instance of a missed pick-up and one incident of an employee failing to properly secure Plaintiff in her wheelchair is insufficient to establish a violation of the ADA and Section 504, Plaintiff is not entitled to injunctive relief. However, the Court will also address Defendants' argument that Plaintiff does not have Article III standing to pursue injunctive relief.

Article III of the Constitution limits the judicial power of the federal courts to the resolution of "cases" or controversies." U.S. CONST. art. III.  Standing requires a plaintiff to demonstrate (1) that she has suffered an injury-in-fact, (2) that the injury was caused by the defendant's actions, and (3) that the injury can be redressed by a favorable decision. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (citing Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)).  In addition, to establish standing to pursue injunctive relief, a plaintiff must demonstrate a "real and immediate threat of repeated injury" in the future. Chapman, 631 F.3d at 946 (quoting Fortyune, 364 F.3d at 1081); see also O'Shea v. Littleton, 414 U.S. 488, 496 (1974).  A court evaluates "the *reality* of the threat of repeated injury, . . . not the plaintiff's subjective apprehensions." City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983) (emphasis in original).  Finally, where a plaintiff seeks to enjoin a government agency, "his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Rizzo v. Goode, 423 U.S.

362, 378-79 (1976) (citations and internal quotation marks omitted). "This 'well-established rule' bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." Midgett, 254 F.3d at 850 (quoting Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1042-43 (9th Cir. 1999)).

    Defendants have not challenged the causation and redressability elements of standing. Therefore, we focus on whether Plaintiff has demonstrated a likelihood of future injury sufficient to support injunctive relief. As noted above, Plaintiff has provided evidence of two unrelated isolated incidents: one involved a missed pick-up, and another involving an employee's failure to properly secure Plaintiff. This evidence fails to raise an inference that Plaintiff faces "an immediate threat of substantial injury." Midgett, 254 F.3d at 850. In fact, with regard to the missed pick-up incident, Plaintiff stated in one of her motions that she "has been riding the Para Transit bus for several years and she had always been picked up during the 25 min. time frame allotted by the RTC to reach the desired pickup time and place." (Pl.'s Mot. Amend at 7. (#101).) The evidence does not support an inference that Plaintiff faces a real and immediate threat of continued, future violations of the ADA if this Court does not issue an injunction. The Court is therefore without power to enjoin a governmental agency, and Defendants are entitled to judgment as a matter of law.

12

**IV. Plaintiff's "Reply" (#127) to the Court's November 14, 2011 Order (#125)**

Plaintiff's reply (#127) again asks the Court to correct alleged errors in its previous Order (#94) granting Defendants summary judgment on Plaintiff's negligence claims arising under state law.  Accordingly, the Court will treat Plaintiff's reply (#127) as a Second Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60(b).[2]

Federal Rule of Civil Procedure 60(b) provides the possible grounds for relief from a court order: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; and (6) any other reason that justifies relief."

Plaintiff again claims that the Court erred with regard to her state law negligence claim in determining that Plaintiff had not established a genuine issue of material fact with regard to proximate cause.  Plaintiff points out, again, that the Court incorrectly stated that she fell from her wheelchair "while moving up a non-ADA compliant ramp," when she actually fell from her wheelchair while moving down the ramp.  While the Court agrees with Plaintiff that it committed a minor error in stating that Plaintiff fell while moving "up" instead of "down," the fact remains that the noncompliant ramp was the proximate cause of Plaintiff's injuries. Proximate cause "is that cause which is a natural and continuous sequence, unbroken by any other intervening causes, that produces

---

[2] The Court has already denied reconsideration of this issue, having treated Plaintiff's previous Motion to Amend Summary Judgment (#101) as a Motion for Reconsideration pursuant to Rule 60(b).  (See Order (#125).)

the injury and without the which the injury would not have occurred." Gonzales v. McDaniel, No. 3:02-cv-0665-ECR-RAM, 2008 WL 4717055, at *8 (D. Nev. Oct. 22, 2008)[3]; see also Bostic v. State, 760 P.2d 1241, 1243 (1988) ("An intervening act will supersede the original culpable act where the intervening act is an unforeseeable, independent, non-concurrent cause of the injury; the intervening cause must, effectively, break the chain of causation."). The Court ruled that Plaintiff did not show that the noncompliant ramp was not an intervening cause in her injury from the failed pick-up incident. Plaintiff has presented no reason to now depart from that ruling. The Court's "up" versus "down" error does not rise to the level of mistake that would justify relief pursuant to Rule 60. Plaintiff's Motion for Reconsideration (#127) will therefore be denied.

## V. Conclusion

Defendants are entitled to summary judgment on Plaintiff's claims arising under the ADA and Section 504 of the Rehabilitation Act. Plaintiff's evidence of two unrelated and isolated incidents cannot, without more, establish violations of the ADA and Section 504 according to prevailing Ninth Circuit case law. Furthermore, Plaintiff does not have standing to seek injunctive relief as evidence of two unrelated incidents does not establish a real and

---

[3] Plaintiff also takes issue with the Court's citation to Gonzales v. McDaniel, a habeas corpus case wherein the petitioner was convicted in state court of four counts of driving under the influence and causing substantial bodily injury or death. 2008 WL 4717055, at *1. Plaintiff objects to being compared to the petitioner in Gonzales; however, the Court merely cited to the case, as it does here, as a general statement of Nevada law governing proximate cause and in no way compared Plaintiff to the petitioner.

14

immediate threat of future harm.  Finally, Plaintiff is not entitled to relief from our previous Order (#94) granting summary judgment on her state law negligence claims because, regardless of whether Plaintiff fell while moving up or down a noncompliant ramp, the ramp was the intervening cause of Plaintiff's injuries, not Defendants' failure to pick her up at the allotted time.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (#127) is **DENIED**.

The Clerk shall enter judgment accordingly.

DATED: June 7, 2012.

_____
UNITED STATES DISTRICT JUDGE

15